# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **In re** | |
| **NEIL GOLDSTEIN,** | **Chapter 7** |
| **Debtor** | **Case No. 04-18873-RS** |
| | |
| **DCFS TRUST,** | |
| **Plaintiff** | |
| **v.** | **Adversary Proceeding** |
| **NEIL GOLDSTEIN,** | **No. 05-1036** |
| **Defendant** | |

## MEMORANDUM OF DECISION ON
## COMPLAINT AND SANCTIONS REQUESTS

By its complaint in this adversary proceeding, the Plaintiff, DCFS Trust ("DCFS"), seeks

a determination that its claim for damages against the Debtor, Neil Goldstein ("the Debtor"),

arising from the Debtor's failure to return a leased car to DCFS, is excepted from discharge

under 11 U.S.C. § 523(a)(2)(A) and (a)(6). Over the course of the litigation, the Debtor moved

for sanctions against DCFS (and in one instance, its attorney) under various theories: for

violation of FED. R. BANKR. P. 9011 by certain allegations in the complaint; under FED. R. CIV.

P. 37 as a discovery sanction; and (in the bankruptcy case) under 11 U.S.C. § 362(h) for violation

of the automatic stay. He also moved for attorneys fees and costs under § 523(d). The Court

tried the complaint and the various requests for sanctions and fees in a single trial/evidentiary

hearing and now enters its findings of fact and conclusions of law on the matters so tried. For the

reasons set forth below, the Court will dismiss the DCFS's complaint for nondischargeability,

award actual damages of $1,000 for violation of the automatic stay, and deny all other requests

for sanctions and fees.

## PROCEDURAL HISTORY

On November 2, 2004, the Debtor filed a petition for relief under Chapter 7, thereby

commencing this bankruptcy case.  Shortly thereafter, DCFS filed a motion for relief from the

automatic stay to exercise its rights with respect to an automobile, one 2003 Mercedes ML350

("the Mercedes" or "the vehicle"), that the Debtor had leased from DCFS's predecessor in

interest.  On November 30, 2004, and no objection having been filed, the Court granted to DCFS

relief from the automatic stay to exercise its rights as to the vehicle.

Then on February 7, 2005, DCFS timely filed a complaint for a determination that its

claim for damages against the Debtor was excepted from discharge under 11 U.S.C. § 523(a)(2)

and (a)(6).  In relevant part, the complaint alleges as follows.  On February 15, 2001,[1] the Debtor

entered into a motor vehicle lease with RAB Motors, Inc., then the owner of the vehicle.  Under

the lease, the RAB Motors leased the vehicle to the Debtor.  RAB Motors then assigned its

interests in the vehicle and lease to DCFS; as of the filing of the complaint, DCFS was the owner

of the vehicle and the owner and holder of the lease.  As of the filing of the bankruptcy petition,

the Debtor had ceased making payments under the lease, and therefore, under the lease, DCFS

was entitled to take possession of the vehicle.  The Debtor, however, had refused to return the

vehicle or to advise DCFS of its current location.  Upon information and belief, he had

transferred the vehicle to an unknown third party without the consent or permission of DCFS.

---

[1] The complaint states that the lease was entered into in 2001.  This appears to have been
a typographical error.  DCFS's own evidence at trial, which was entirely uncontroverted and
undisputed, showed that the lease was entered into in 2003.

The Debtor had converted DCFS's property, and that conversion was a willful and malicious injury to DCFS's property rights. DCFS incurred damages in the amount of $42,020.12 due to its inability to resort to its property. These damages were caused by the Debtor's willful and malicious act and conversion of DCFS's property. For all of these reasons, DCFS's claim against the Debtor in the amount of $42,020.12 is nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(6). These are the allegations of the complaint.

The Debtor filed an answer to the complaint. In it, he denied most of the operative allegations and stated that he had subleased the vehicle to a woman named Blondie Nelson through what he believed was a legitimate sublease program; that he had believed this sublease arrangement would benefit DCFS by resulting in a continuing stream of lease payments to DCFS, and that it did in fact result in such a benefit; that he had not refused to return the vehicle but rather was unable to return it because the vehicle was not in his possession; and that he had given the name, address, phone number, and email address of Ms. Nelson to DCFS and had offered to cooperate with DCFS in pursuing its claims against her and the sublease agency. The Debtor further alleged that agents of DCFS had spoken with Blondie Nelson, who had told DCFS that she had had possession of the vehicle but had returned it to the sublease agency, who was to return it to the Debtor.

Approximately one month after filing his answer, the Debtor moved for sanctions against the DCFS and its attorney, Martin Mooney, under FED. R. BANKR. P. 9011 for making four allegations that, according to the Debtor, were either false or unsupported by belief formed after reasonable inquiry: (1) that "Defendant had refused to return the vehicle or to advise the plaintiff of its current location"; (2) that "upon information and belief, Defendant had transferred the vehicle to an unknown third party without the consent or permission of Plaintiff"; (3) that

3

"Defendant's conversion of the property is a willful and malicious injury"; and (4) that

"Plaintiff's damages were caused by defendant's willful and malicious acts and conversion of its

property." The motion demands, on account of the alleged violations of Rule 9011, that the

complaint be dismissed and that the Debtor be awarded monetary sanctions against DCFS and

Attorney Mooney, including his attorney's fees and costs incurred in this adversary proceeding.

DCFS filed an opposition to the motion. After a preliminary hearing on the motion, the

Court entered an Order to Show Cause Why Sanctions Should Not Be Imposed on DCFS Trust.

In relevant part, it stated:

1.  Pursuant to 11 U.S.C. § 105(a), FED. R. BANKR. P. 9011(c), and this
    Court's inherent authority, DCFS is hereby ORDERED TO SHOW
    CAUSE why sanctions should not be imposed for its inclusion of the
    following allegations in the complaint commencing the within Adversary
    Proceeding, which allegations appear to be false and unfounded:

    a.  "Debtor has refused to return the vehicle or to advise the plaintiff
        of its current location." Complaint, ¶ 7. This statement appears to
        be false in that it appears that the Debtor had informed the Plaintiff
        that he had transferred possession of the vehicle to a third party
        whom he had identified to the Plaintiff. Therefore, the Debtor had
        not "refused" to turnover the vehicle or advise of its current
        location; rather, Debtor simply was unable to turnover the vehicle
        and to disclose its current location.

    b.  "Upon information and belief, Defendant has transferred the
        vehicle to an unknown third party without the consent or
        permission of Plaintiff." Complaint, ¶ 8. This statement appears
        to be false in that, before the Plaintiff made this statement, the
        Debtor had made known to the Plaintiff the identity of the
        transferee of the vehicle. The transferee was not unknown to the
        Plaintiff.

The Order to Show Cause also (1) required DCFS to file a response to the order, with supporting

affidavits,[2] (2) required the Debtor to file a statement of his costs and damages, including

---

[2] The order further provided that the affidavits submitted in support would be admissible
at the evidentiary hearing only if the affiant were present at the hearing for cross-examination.

reasonable attorney's fees incurred as a direct result of DCFS's alleged violations of Rule 9011,

and (3) provided that the evidentiary hearing on the order to show cause would be held in

conjunction with the trial of the adversary proceeding.  DCFS did file a response to the order,

with a supporting affidavit from Attorney Martin Mooney.  The Debtor moved to strike this

affidavit, but the Court denied the motion to strike, stating, "[t]he court will accept the affidavit

for what it is worth, keeping in mind the various evidentiary objections articulated in the

memorandum in support of this motion."  The Debtor also filed a Statement of Damages, stating

that, as a result of DCFS's violation of 9011 and "its violation of Rule 9011 and other

violations," it had suffered damages consisting of $23,474.06 in counsel fees and costs and

"emotional distress in an as yet unliquidated amount."  The Debtor did not identify the portion of

such damages that was attributable to the alleged violation of Rule 9011.

 The parties later filed cross-motions for summary judgment.  After hearing, the Court

denied both.  The Debtor moved for reconsideration of the order denying his motion for summary

judgment, and the Court denied that motion as well.

 Meanwhile, back in the bankruptcy case itself (as opposed to this adversary proceeding

within it), the Debtor moved under 11 U.S.C. § 362(h) for sanctions against DCFS for willful

violation of the automatic stay.  As the basis of its motion, the Debtor alleged that on May 17,

2005, the Debtor was served with a complaint that DCFS had filed against the Debtor in a

California state court to recover from the Debtor both possession of the vehicle and damages.

The Debtor argued that the filing of that complaint and prosecution of that action were entirely or

in large measure beyond the scope of the limited relief from the automatic stay that DCFS had

been granted upon its earlier motion in this case.  The Debtor further alleged that this violation of

the stay was willful and malicious, an *in terrorem* tactic, and one designed to harass and cause

undue expense.  The motion requested compensatory damages and an order requiring DCFS to

dismiss the state court action.

DCFS responded to the motion by admitting that it had in fact commenced suit against

the Debtor in California, but DCFS added that the inclusion of the Debtor as a defendant in that

action (Goldie Nelson was also a defendant) was not willful but inadvertent, done by California

counsel without knowledge of the Debtor's bankruptcy.  DCFS characterized the violation of the

stay as technical, short-lived (DCFS having terminated the action against the Debtor upon

learning of the violation), and resulting in no damages.  For all these reasons, argued DCFS, the

violation warrants no imposition of damages under § 362(h).  The Court scheduled an evidentiary

hearing on this motion in conjunction with the trial in the adversary proceeding.

On July 13, 2005, the parties filed a Joint Pretrial Memorandum in which they outlined,

among other things, certain facts as to which they were in agreement.  On November 30, 2005,

the Court held a one-day trial/evidentiary hearing on the complaint in the adversary proceeding,

the Debtor's motion for sanctions under Rule 9011, the related Order to Show Cause, and the

Debtor's motion for sanctions for violation of the automatic stay.  Only two witnesses testified at

the trial:  the Debtor and a Mr. Matthew Zani, an employee of Daimler-Chrysler Financial

Services.

At the close of the trial, the Debtor added yet another request for sanctions by making an

oral motion for sanctions against DCFS under FED. R. CIV. P. 37(c)(2) for failure to admit facts

that DCFS should have admitted (in response to a request for admissions propounded by the

Debtor).  In support of this motion, the Debtor stated that he had requested two admissions—that

"the Debtor did not refuse to return the vehicle," and that "the Debtor did not refuse to advise the

Plaintiff of the vehicle's current location"—and that DCFS had declined to admit either.  Both

6

should have been admitted, the Debtor argued, because, as he contends the trial showed, there

was no evidentiary support for the propositions that the Debtor had refused to return the vehicle

and that the Debtor had refused to advise DCFS of the vehicle's current location. Consequently,

the Debtor concludes, DCFS should be sanctioned for failure to make the requested admissions.

Just prior to the trial, the Debtor filed a document entitled "Defendant's Updated

Statement of Damages." The statement purports to state total damages "relating to

Plaintiff's violation of Rule 9011, its violation of the automatic stay and other violations,"

without quantifying the damages attributable to any specific violation. In it, the Debtor (through

counsel—the document is not an affidavit and not supported by an affidavit) states that counsel

fees and costs through October 31, 2006 amount to $30,872.22, and he estimates that the fees and

costs for trial and trial preparation will be an additional $6,000. He adds that he has suffered

emotional distress in an unliquidated amount. After trial, DCFS filed an opposition to the

statement, saying (1) that it was not supported by evidence, (2) that no evidence of the stated

damages had been adduced at trial, (3) that the stated damages exceeded what would be

appropriate for the alleged violation of Rule 9011 and should be limited to those fees and costs

incurred as a result of the alleged violation, and (4) that emotional distress is not compensable for

violations of Rule 9011. The Debtor filed a reply to DCFS's objection, and DCFS filed a

supplemental objection.


**FINDINGS OF FACT**

On the basis of the agreed facts set forth in the parties' Joint Pretrial Memorandum and of

the evidence adduced at trial, the Court now makes the following findings of fact.

On February 15, 2003, the Debtor, then married and living in San Francisco, California,

7

entered into a lease agreement with R.A.B. Motors, Inc., of San Rafael, California, for the lease

of a motor vehicle, a 2003 Mercedes-Benz ML350, for his wife. The lease agreement was

memorialized in a writing. The writing specified (among other things) that the term of the lease

was 60 months and that the total of payments thereunder was $49,733.69, including 59 monthly

payments of $770.91. It also included relevant promises: "I will not assign or sublease any

interest in the vehicle or this lease"; "If I do not purchase this vehicle at the end of the Lease

term, I will promptly return it to you [the lessor]"; "During the term of this lease, I will maintain

insurance acceptable to you"; "I will list you as the "Loss Payee" for the mandated insurance

coverage; and "I agree to lease the vehicle described above on the terms and conditions in this

Lease."

In its signature section, this writing twice advised the Debtor not to sign the lease before

reading it. Nonetheless, as the Debtor credibly testified, he—although he was an educated man,

in fact an English major, and the lease was drafted in clear and commendably readable

English—signed the lease without first reading it. He thus, recklessly, made a number of

representations and promises to the lessor without knowing the substance of the promises and

representations he was making. Nonetheless, he did not sign the agreement with intent to

deceive or with intent *not* to perform the promises he thereby made. He intended to abide by the

agreement and to honor the promises he made; but, except for the more intuitive obligations—

specifically, to pay the cost of the lease and to return the vehicle at its term—he simply did not

know what those promises were. He had no intention at this time of ever subleasing the vehicle.

Also on February 15, 2006, R.A.B. Motors also signed the lease and, by the same

signature and language immediately preceding it, assigned its interests in the vehicle and lease to

DCFS. DCFS remains the owner of the lease and vehicle.

8

Upon the Debtor's signing of the lease, R.A.B. Motors gave possession of the vehicle to the Debtor, who took it home for his wife's use. Despite the Debtor's beneficence in providing her with the use of this vehicle—she had wanted a Mercedes, and he had leased it to make her happy—his wife separated from him in May, 2003, and, in their separation, she wanted neither the vehicle nor responsibility for the lease payments. As he had another vehicle of his own and no use for the Mercedes, the Debtor looked into returning it to the lessor. This, he learned, would have left him owing a substantial obligation on the early-terminated lease. Consequently, he decided against returning the vehicle and opted instead to sublease it.

He had been told by a colleague at work, whose opinion he respected, that he could sublease the vehicle, and that this was a legitimate and widespread practice. Through an internet search, he discovered a subleasing agency known as U.S. AutoManagement of Stockton ("USAM") and shortly thereafter, on May 28, 2003, entered into an agreement with USAM to sublease the vehicle to a Ms. Blondie Nelson. Shortly thereafter, he transferred possession of the vehicle to Nelson. And around the same time, he discontinued his own insurance of the vehicle, in violation of his obligations under the lease. The Debtor entered into the subleasing agreement, transferred possession of the vehicle to Nelson, and discontinued his insurance all without DCFS's consent or even notice to DCFS.

The Debtor contends that when he entered into the subleasing agreement, transferred possession of the vehicle to Nelson, and discontinued his insurance, he believed that subleasing was a legitimate practice and had no knowledge that the primary lease prohibited subleasing. He states that he had been told that the practice was legitimate by a colleague at work and by USAM itself; and he contends he never read the primary lease. I disbelieve his testimony insofar as he contends he believed the option of subleasing was a legitimate one for him. The decision to

9

sublease a vehicle on which one continues to owe in excess of $40,000 over the term of the lease

is a decision of some moment and fairly obvious potential consequence. The Debtor did not fail

to appreciate this, as was evidenced by his own testimony that he assured himself about the

trustworthiness of the person to whom he was transferring possession of the vehicle. In view of

the importance of this step, I cannot believe that the Debtor did not consult his lease about his

options thereunder. Upon reading it, he would surely have learned that subleasing and

discontinuance of insurance were prohibited. The lease was clear on these issues, even to a lay

person. If in fact he did not consult the lease, he would at least have known that he had not done

so and that, by failing to inform himself of the terms of the lease, he was deliberately

disregarding his earlier promise to abide by its terms. His reliance on the advice of a colleague,

and especially of USAM, cannot have overcome in his own mind this knowledge of his own

willful ignorance of the lease. He offered no evidence of the specific advice he received from

USAM and his colleague on the legitimacy of subleasing, and, in any event, he does not indicate

that he showed his lease to either. (He does not contend that he consulted an attorney on the

issue.)  The Debtor cannot have believed in good faith that what he was doing was legitimate; at

best, he had serious questions about its legitimacy but remained willfully ignorant of relevant

terms of the lease.

Under his arrangement with Nelson, Nelson was to pay him, each month, the monthly

cost to him of leasing the vehicle from DCFS. The Debtor in turn would use these monthly

payments from Nelson to fund his own continuing payments to DCFS. This arrangement worked

according to plan from its inception to the eve of his bankruptcy filing. During this period, she

provided him, in advance, with postdated checks. Each month, before depositing one of her

checks, he advised her (by telephone) that he was about to do so, to be sure that the check would

10

be funded; she then authorized him to deposit it, and he did deposit it. Then, when the check

cleared, he paid DCFS. This resulted in a more or less steady stream of payments to DCFS for

most of the approximately 17 months between the commencement of the sublease and Debtor's

bankruptcy filing.[3]

On November 2, 2004, the Debtor filed his bankruptcy petition. In conjunction with the

filing, he planned to return the vehicle to DCFS. Therefore, shortly before his bankruptcy filing,

he notified Blondie Nelson by telephone that he planned to file for bankruptcy protection and to

surrender the vehicle to DCFS, and, accordingly, he asked her to return the vehicle to her local

Mercedes-Benz dealership. She told him that she would. The day after his bankruptcy filing, the

Debtor contacted DCFS and told DCFS that he had filed a Chapter 7 petition and intended to

surrender the vehicle.

In the following days or weeks, the Debtor ascertained, by calls to the Mercedes-Benz

dealership to which Nelson had promised to return the vehicle, that the vehicle had *not* been

turned in. He subsequently made many efforts to telephone Nelson regarding the whereabouts of

the vehicle, but she did not return or answer his calls. At this point, he says, he knew he had a

problem. In the following month, he notified DCFS for the first time[4] that he had subleased the

---

[3] However, as of the date of his bankruptcy filing, the Debtor had ceased making
payments on the lease to DCFS, so he did not pass every last one of Nelson's payments on to
DCFS. It is not clear how many payments he withheld.

[4] Apart from his direct obligations to DCFS, the sublease should have been disclosed in
the schedules and statement of financial affairs that the Debtor filed in his bankruptcy case on
November 5, 2004. He signed both under penalty of perjury. Notably, he failed to disclose on
Schedule G (for "executory contracts and unexpired leases") the existence of his sublease
agreement with USAM and Nelson. Also, the Statement of Financial Affairs, at item 2, requires
disclosure of the amount of income received by the Debtor other than from employment, trade,
profession, or operation of the debtor's business during the two years immediately preceding the
commencement of the case. Here, the Debtor should have disclosed the payments he received on
the sublease, but he answered "none." DCFS has not objected to the Debtor's discharge on the

vehicle and had transferred possession of it to Blondie Nelson.  By letter dated December 20, 2004, Debtor's counsel, Mr. Bodoff, informed DCFS that the Debtor "does not have the vehicle," and that "it can be obtained from Blondie Nelson."  The same letter informed DCFS of Nelson's address, telephone numbers, and email address.

On December 21 and 27, 2004, representatives of DCFS spoke to an individual who identified herself as Nelson.  That individual was contacted at one of the phone numbers provided by the Debtor.  Nelson stated in those conversations that the Debtor had asked her to return the vehicle to the Mercedes dealership, that in November 2004, she had turned the vehicle over to a Jeremy Sykes of USAM in a parking lot, and that she did not know where the vehicle was located.

The Debtor has not returned the vehicle to DCFS.  He is unaware of its present location. Nor does he know who is presently in possession of the vehicle.

On or about May 3, 2005, DCFS filed suit against Goldstein and Nelson in California Superior Court, seeking possession of the vehicle and monetary damages.  By May 19, 2005, the Debtor had learned of the suit.  Through counsel, he filed that day in this court a motion for sanctions against DCFS for willful violation of the automatic stay.  On May 26, 2005, DCFS filed a response to the motion, stating that the filing of the action as against the Debtor had been inadvertent, done by California counsel without knowledge of the Debtor's bankruptcy filing, and that immediately upon learning of the bankruptcy case, DCFS's California counsel immediately took steps to dismiss so much of the action as pertained to relief in the nature of damages and costs from the Debtor.  On June 9, 2006, DCFS dismissed the suit.  The Debtor has adduced no evidence that the filing of the suit was anything other than inadvertent, the result of

basis of these apparently false oaths.  See 11 U.S.C. § 727(a)(4)(A).

an internal mistake at DCFS. DCFS corrected the mistake and discontinued the violation as soon

as it was brought to their attention. The Debtor incurred damages from the violation to the extent

of the legal expenses incurred to file the motion for sanctions for violation of the stay. The

Debtor has not submitted evidence of the cost of such services. Nor has he adduced evidence of

other damages arising from the violation, in the nature of emotional distress or otherwise.


## DISCUSSION

a.     **Dischargeability under § 523(a)(2)(A)**

DCFS first contends that the debt that the Debtor owes to DCFS by virtue of his

conversion of the vehicle is excepted from discharge by operation of § 523(a)(2). The substance

of this count is that the Debtor, by signing the DCFS lease, made certain promises to

DCFS—specifically, a promise not to sublease the vehicle, a promise to keep it insured, and a

promise to return the vehicle at the end of the lease term—on which DCFS relied and which the

Debtor then broke, thus causing damage to DCFS by its loss of the vehicle and its value. By this

theory, the false statements that constitute the fraud are the promises themselves.

DCFS is proceeding under 11 U.S.C. § 523(a)(2)(A),[5] which excepts from a Chapter 7

discharge any debt "(2) for money, property, services, or an extension, renewal, or refinancing of

credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial condition." DCFS is contending

---

[5] DCFS seeks to establish nondischargeability under § 523(a)(2) but does not specify
whether it is proceeding under §523(a)(2)(A) or (a)(2)(B). Insofar as the basis of the count under
§ 523(a)(2) is a promise, DCFS cannot be proceeding under subsection (a)(2)(B), which requires
a writing concerning the debtor's or an insider's financial condition. A representation of intent to
honor a promise is not a statement concerning anyone's financial condition. Therefore, DCFS
must be proceeding under § 523(a)(2)(A), and I construe this count accordingly.

that the Debtor's liability for non-return of the vehicle was obtained by false representation, specifically the false promises. To establish that a debt arises from a false representation, DCFS must prove, among other things, that the Debtor made a false representation. *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997). A promise, by its nature, is a representation of intent to do that which is promised, to keep or honor the promise. A promise can constitute a false representation, but only if it is made without intent to honor it: the operative misrepresentation is one of intent to honor the promise. *Id*. at 786-787.

> The test may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met).

*Id*. at 787. To establish that a promise is a false representation within the meaning of 11 U.S.C. § 523(a)(2)(A), it is not sufficient to prove that a promise was made and later broken, or even that a promise was made which the promisor later decided not to honor. Rather, a plaintiff must prove that, *when the promise was made*, the promisor lacked intent to honor it.

DCFS has certainly adduced evidence and admissions of facts from which the Court could infer that the Debtor signed the DCFS lease without intent to honor the promises in question. The evidence is as follows: that the Debtor signed the lease; that a short time later he violated major provisions of it (to keep the vehicle insured and not to sublease it); that by common sense, if not actual knowledge of the lease, the Debtor had reason to know that his violations might well be violations of the lease and of significant concern to DCFS; that he did all these things without notice to DCFS; that he never returned a pricy vehicle that DCFS had last entrusted to his possession; and that the vehicle is unaccounted for. Still, on the basis of additional facts proven by the Debtor, I find that the Debtor *did* intend to honor the lease and the

14

promises therein when he signed it. Of course, having failed to read the lease, he did not then

know precisely what those promises were, but he did at least have a general intent to abide by it,

and he did have a definite intent to honor some its more obvious obligations, especially to return

the vehicle at the end of the lease term. The circumstances that prompted the subleasing did not

exist when he entered into the lease, and he did not foresee them at that time. Subleasing simply

was not a matter of concern to him when he signed the lease. The Court concludes that his

promises in the lease were not false, that he made them with intent to honor them. A false

statement being a necessary element of DCFS's case under § 523(a)(2)(A), the count under that

subsection therefore fails.

**b.      Dischargeability under § 523(a)(6)**

By the second count in its complaint, DCFS seeks a determination that the Debtor's

liability to DCFS for conversion of the vehicle—that is, for transferring or otherwise exercising

control over the vehicle in such a way as to preclude its return to DCFS at the end of the lease,

upon the filing of his bankruptcy petition—is excepted from discharge by § 523(a)(6) as a debt

"for willful and malicious injury by the debtor . . . to the property of another entity." 11 U.S.C. §

523(a)(6). The Debtor responds that this count must fail primarily because the Debtor did not

intend to cause the injury in question, permanent loss of the vehicle; the Debtor points out that

the Supreme Court has held that the statutory words "willful . . . injury" require a showing of

intent to cause the injury in question.[6] DCFS, while conceding that it must prove intent to cause

the injury, answers that it may show such intent by showing that, from an objective standpoint,

the harm in question was substantially certain to follow from an intentional act that caused the

---

[6] See *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

harm. DCFS argues that this standard is satisfied because the Debtor was reasonably certain, or

at least had cause to be reasonably certain, that once he lost control of the car by handing it over

to the sublessee, "he might not be able to get it back for Mercedes-Benz."

The Debtor has properly articulated the standard. As the Supreme Court has held,

"willful injury" requires a showing of intent to injure. *Kawaauhau v. Geiger*, 523 U.S. 57, 118

S.Ct. 974, 140 L.Ed.2d 90 (1998). This is a subjective standard, focusing on what the Debtor

actually intended. Some courts have taken the position that it would be sufficient if the debtor

believed that injury was substantially certain to occur as result of his or her behavior. I need not

determine the merits of this lesser standard but merely note that it too is a subjective standard,

focusing on the debtor's actual belief, and that it requires belief that the injury is "substantially

certain" to occur, not merely that debtor's conduct will create a risk of the injury.

On the facts before me, even the lesser standard is not satisfied. I find that the Debtor

transferred possession of the vehicle to Blondie Nelson without intending to permanently

dispossess DCFS of the vehicle. At all times, his intention and expectation were that, at the end

of the sublease, Ms. Nelson would return the vehicle to him, and he would in turn return it to

Mercedes-Benz, or that she would return it directly to Mercedes-Benz at his request. He did not

believe that his transferring of possession of the vehicle to Nelson under the sublease was

substantially certain to result in the vehicle's being permanently lost to DCFS. Indeed, even

using an objective test and the still lesser standard of "reasonably certain,"as DCFS urges, the

Debtor would prevail. The Debtor was certainly careless, even reckless in some respects, in

subleasing and transferring possession of the vehicle, but on the facts then known to him, the

harm that is the subject of this count would not, to an objective observer, have appeared

reasonably certain to occur. For these reasons, I conclude that the injury was not willful, and

16

therefore that the debt for the injury is not excepted from discharge by §523(a)(6).

c.    **Costs and Fees Under § 523(d)**

    As the prevailing party on a count under § 523(a)(2), the Debtor has requested costs and

reasonable attorney's fees under 11 U.S.C. § 523(d).  Section 523(d) states:

> If a creditor requests a determination of dischargeability of a
> consumer debt under subsection (a)(2) of this section, and such
> debt is discharged, the court shall grant judgment in favor of the
> debtor for the costs of, and a reasonable attorney's fee for, the
> proceeding if the court finds that the position of the creditor was
> not substantially justified, except that the court shall not award
> such costs and fees if special circumstances would make the award
> unjust.

11 U.S.C. § 523(d).  A debtor is entitled to costs under this subsection only if, among other

things, "the court finds that the position of the creditor was not substantially justified."  "[T]he

position of the creditor" here refers to the creditor's position in prosecuting the count under

subsection (a)(2).  I find that the position of DCFS in prosecuting its count under § 523(a)(2) was

substantially justified.  DCFS had ample evidence of fraudulent intent—i.e., of promises made

without intent to honor them—on which to proceed and, especially in view of the evident facts,

was by no means obligated to accept the Debtor's story and averments of innocence at face value.

The count under § 523(a)(2) failed only on that one element; the rest were sound.  Therefore, the

Debtor is not entitled to costs and fees under § 523(d).[7]

---

    [7] It is not clear that § 523(d) applies here at all. Fees and costs under § 523(d) are
available only where the request under §523(a)(2) concerns a "consumer debt." Without
deciding the issue, the Court questions whether liability for conversion of a vehicle, even one
obtained under a consumer lease, is properly deemed a "consumer" debt.

d.     **Debtor's Motion for Sanctions Pursuant to Rule 9011**

The Debtor has moved for sanction under Rule 9011 on the basis of the four statements in

the complaint: (1) "Defendant had refused to return the vehicle or to advise the plaintiff of its

current location"; (2) "Upon information and belief, Defendant had transferred the vehicle to an

unknown third party without the consent or permission of Plaintiff"; (3) "Defendant's conversion

of the property is a willful and malicious injury"; and (4) "Plaintiff's damages were caused by

defendant's willful and malicious acts and conversion of its property."  The Debtor contends that,

when the complaint was filed, the DCFS and its attorney, Martin Mooney, knew that statements

(1) and (2) were not true, and, because (1) and (2) were untrue, they knew that conclusions of law

set forth in statement (3) and (4) were not warranted by existing law or by nonfrivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law, as

required by Rule 9011(b)(2).

I find no cause for sanctions here as to any of the four statements.  In Statement (1), the

Plaintiff had evidentiary support for the proposition that the Debtor had refused to return the

vehicle and to disclose its location:  DCFS had given him possession of the vehicle and, despite

demand, he had neither returned it nor told them where the vehicle was.  These undisputed facts

support an inference that the Debtor still controlled the vehicle and was refusing to return it and

to disclose its location.  DCFS had no obligation to accept or credit the Debtor's averments to the

contrary; by this time DCFS knew him as a man who had in four major respects disregarded and

violated the terms of his lease,[8] so his reputation for honesty was something less than compelling.

Nor did it help that the Debtor's averments were in part corroborated to DCFS by a woman,

---

[8] Debtor had violated his promises to refrain from subleasing, to keep the vehicle insured
(against theft, among other things), to pay for the lease, and to return the vehicle.

reached at a telephone number given DCFS by the Debtor, who identified herself as Goldie

Nelson. DCFS had no independent knowledge of Goldie Nelson, did not know whether the

woman on the phone was in fact who she purported to be, had no way of knowing whether her

corroborative statements were true, and, in view of her connection to the Debtor, had good cause

to suspect otherwise.

In Statement (2), the Debtor takes exception only to the allegation that the transferee was

"unknown." The Debtor protests that, by the time of the filing of the complaint, he had already

told DCFS the name, address, telephone number, and email address of the transferee, Goldie

Nelson, and that a representative of DCFS had in fact already spoken to Ms. Nelson at the given

telephone number. Therefore, the Debtor concludes, the transferee was not unknown to DCFS.

The Court disagrees. The complaint describes the transferee as "unknown" without

specifying when she was unknown. It is not disputed that Ms. Nelson was not known to DCFS

when the Debtor transferred possession of the vehicle to her; the most natural way to read the

allegation in the complaint is that "unknown" refers to the time of the transfer. But if "unknown"

were construed to refer to the time of the complaint, the statement would still be true. Except for

the limited information supplied to them by the Debtor, of which DCFS had good cause to be

suspicious, Ms. Goldstein was essentially unknown to DCFS at the time of the complaint.

Having an alleged name and limited contact information for an otherwise unknown individual

does not make that person "known."

Statements (3) and (4) both state conclusions of law as to whether the Debtor's acts and

the injury caused thereby were willful and malicious. These conclusions of law were well

supported by evidence. The Debtor prevailed here not for lack of evidence to support DCFS's

claim of nondischargeability under § 523(a)(6), but because he himself has proven additional

19

facts which DCFS had no obligation to accept as true.

For all these reasons, the Debtor's Motion for Sanctions Pursuant to Rule 9011 will be denied.

e.   **Debtor's Motion for Sanctions under FED. R. CIV. P. 37(c)(2)**

Under FED. R. CIV. P. 37(c)(2), the Debtor has moved for sanctions against DCFS for failure to admit facts the Plaintiff should have admitted in response to a request for admissions that the Debtor had propounded. The motion must be denied. The requested admissions concerned facts as to which DCFS had evidence and the Debtor had countervailing evidence: that "the Debtor did not refuse to return the vehicle," and that "the Debtor did not refuse to advise the Plaintiff of the vehicle's current location." As explained above, the Debtor's countervailing evidence hinged entirely on the credibility of the Debtor and the corroborative testimony of an unknown third party. DCFS had no obligation to accept this evidence at face value and therefore no obligation to make the requested admissions.

f.   **Debtor's Motion for Sanctions for Willful Violation of the Automatic Stay**

The Debtor has moved for compensatory damages against DCFS for willful violation of the automatic stay by the filing of a complaint against the Debtor in a California state court. DCFS admits the fact of the filing and that the scope of the complaint exceeded the scope of the relief from stay it had been granted, but it contends that the filing was inadvertent, done by California counsel without knowledge of the Debtor's bankruptcy. DCFS states that the violation of the stay was short-lived, DCFS having terminated the action against the Debtor upon learning of the violation, and resulted in no damages.

20

Section 362 of the Bankruptcy Code states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h).[9] The Debtor bears the burden of proving that the automatic stay was violated, that the violation was willful, and that the violation caused damages (and the extent thereof).[10] At trial, the parties submitted no evidence on this motion. By admission, the Debtor has established the fact of the violation. The Debtor was harmed at least to the extent of the attorney's fees incurred to generate the present motion in response to the violation, but the Debtor has submitted no evidence of the extent of the fees attributable to this motion. Nor has the Debtor adduced evidence of other damages. I have no evidence that the violation was not abated promptly when it was brought to DCFS's attention. By admission, the filing of the complaint was willful because California counsel filed it intentionally, but no evidence has been adduced to suggest that California counsel was aware of the bankruptcy filing or that the filing was not inadvertent, all as DCFS alleges. The Court therefore concludes that damages should be awarded for and limited to reasonable compensation for the attorney's fees associated with the present, relatively simple motion. The Court quantifies such fees at $1,000.00. An order will enter allowing sanctions to that extent.

---

[9] This bankruptcy case, having been commenced before the effective dates of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), is governed by the Bankruptcy Code as it existed before the amendments effected by BAPCPA. The citation to § 362(h) is a pre-BAPCPA citation. In the amendments, the language of subsection (h) was modified and moved to subsection (k).

[10] In addition, where punitive damages are sought, the Debtor bears the burden of proving that they are justified. The Debtor has not requested punitive damages. Nor would they be justified here.

g.    **Conclusion**

For the reasons articulated above, judgment shall enter dismissing the complaint for

determination of nondischargeability and denying all requests of the Debtor for sanctions therein.

A separate order will enter in the bankruptcy case allowing the Debtor's Motion for Sanctions for

Willful Violation of the Automatic Stay to the extent of compensatory sanctions in the amount of

$1,000.

Date: _June 28, 2006_                        _Robert Somma_
                                              Robert Somma
                                              United States Bankruptcy Judge

cc:  Douglas J. Rose, Esq., for DCFS
     Martin Mooney, Esq., for DCFS
     Joseph S.U. Bodoff, Esq., for Debtor
     John Aquino, Esq., Chapter 7 Trustee